UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

F I L E D

Apr 10 2025

ARTHUR JOHNSTON, CLERK

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**THE HANDY PANTRY AND
LUCAS TUCKER**                                                      **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO. 2:23-cv-96-KS-MTP**

**THE CITY OF HATTIESBURG**                                      **DEFENDANT**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 52**

THIS CAUSE came before the Court on December 2, 2024 for trial without a jury. This is a suit arising from a citation issued to Plaintiff Lucas Tucker, the owner of The Handy Pantry, for an alleged violation of Ordinance No. 3258, which was passed by the City of Hattiesburg on June 18, 2019.  Plaintiffs do not seek monetary damages in this matter. Rather they seek a declaratory judgment that the Ordinance is unconstitutional and otherwise invalid and, alternatively, seek an injunction issued against City to preclude any future enforcement against these Plaintiffs.

Having considered the testimony and evidence in this case, along with the parties' proposed findings of fact and conclusions of law and the relevant legal authorities, the Court finds that the Ordinance conflicts with portions of Mississippi's Uniform Controlled Substances Law ("UCSL"), thereby rendering the Ordinance invalid. The Court also finds that the Ordinance is unconstitutional for vagueness.

## I.  PROCEDURAL HISTORY

1.      This lawsuit arises from a "Complaint and Citation" issued to Plaintiff Lucas Tucker on March 17, 2023 related to items offered for sale at The Handy Pantry, located at 2425 W. 4th Street in Hattiesburg, Mississippi. Plaintiffs filed their Complaint [1-2] against the City of Hattiesburg (the "City") on June 30, 2023 in the Chancery Court of Forrest County, Mississippi.

2.      The City removed the action to this Court on July 11, 2023, asserting federal question jurisdiction under 28 U.S.C. § 1331, based on the constitutional issues raised in the Complaint.

3.      Plaintiffs filed a Second Amended Complaint [8] against the City on August 22, 2023.[1]

4.      After the discovery period, the parties proceeded to a non-jury trial on December 4, 2024, beginning with opening statements, followed by witness testimony and introduction of relatively few exhibits, and concluding the same day.

5.      Under Federal Rule of Civil Procedure 52(a)(1), "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." The Court, having heard all the testimony and arguments in this case, having considered all of the exhibits, depositions, relevant legal authorities, and proposed findings of fact and conclusions of law submitted by all parties, now, by a preponderance of the evidence, makes the following Findings of Fact and arrives at the following Conclusions of Law in accordance with Rule 52:

## II.    FINDINGS OF FACT

1.      Through its City Council by unanimous vote of its councilmembers and approval of its Mayor, the City of Hattiesburg adopted Ordinance Number 3258 ("the Ordinance") on June 18, 2019.

2.      The Ordinance pertains to the sale of items that *could* be considered drug paraphernalia under the UCSL, located in the Mississippi Code at § 41–29–101 to § 41–29–191, particularly at §41-29-105(v).

---

[1] Although the pleading is titled Second Amended Complaint, there does not appear to be a First Amended Complaint in the record.

3.    The body of the Ordinance reads as follows:

**AN ORDINANCE PERTAINING TO PARAPHERNALIA AS DEFINED IN MS CODE 41-29-105 (V).**

**WHEREAS**, under Miss. Code Ann. § 41-29-139 (d) (2) it is unlawful for any person to deliver, sell, possess with intent to deliver or sell, or manufacture with intent to deliver or sell, paraphernalia, knowing or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of the Uniform Controlled Substances Law; and

**WHEREAS**, Miss. Code Ann. § 41-29-105 (v) defines "paraphernalia" and provides how a court or other authority may determine whether an object is paraphernalia; and

**WHEREAS**, under Miss. Code Ann. § 21-17-5 (1) provides that the governing authorities of every municipality in Mississippi shall have the power to adopt orders, resolutions or ordinances with respect to the municipal affairs, property and finances which are not inconsistent with the Mississippi Constitution or any statute or law of the State of Mississippi; and

**WHEREAS**, the Council has been made aware of items which are primarily designed and intended for use with illegal drugs being offered for sale within the city limits of Hattiesburg, and the Council is particularly concerned that such items are being displayed in a manner that attempts to glamorize these products and make them attractive to teenagers and young adults;

**NOW, THEREFORE, BE IT ORDAINED** by the Mayor and the City Council of the City of Hattiesburg, Mississippi:

**SECTION 1**. For purposes of this Ordinance, "person" shall mean owner, principal, clerk, agent or employee.

**SECTION 2.** No person shall offer for sale any items described in Miss. Code Ann. § 41-29-105 (v) in open displays which are visible or accessible to the public without the intervention of a store employee or the store's owner. Any person who sells any items described in Miss. Code Ann. § 41-29-105(v) shall require the potential purchaser of said items to provide proof that he or she is at least eighteen (18) years of age.

**SECTION 3**. No person shall offer for sale any items described in Miss. Code Ann. § 41- 29-105 (v) within Seven Hundred Fifty Feet (750') of any church, school, kindergarten or preschool.

SECTION **4**. Any person violating this Ordinance shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than $100.00 nor more than $500.00, or by imprisonment not to exceed ninety (90) days, or by both such fine and imprisonment.

SECTION **5**. Nothing contained herein is intended to be in conflict with the laws of the State of Mississippi, and if any section, subsection, sentence, clause, phrase or portion of this Ordinance is for any reason held to be invalid or unconstitutional by any court of competent jurisdiction, the remaining portions of this Ordinance shall remain in effect.

SECTION **6**. This Ordinance shall take effect and be in force thirty (30) days from and after its passage as provided by law.

(Joint Trial Exhibit #1).

4.      The Ordinance was adopted at the urging of James Moore, a local businessman,

whose son died of a drug overdose,

5.      Section 41-29-105(v) of the UCSL states:

(v)(i) "Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of the Uniform Controlled Substances Law. It includes, but is not limited to:

1. Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;
2. Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances;
3. Isomerization devices used, intended for use or designed for use in increasing the potency of any species of plant which is a controlled substance;
4. Testing equipment used, intended for use, or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances;
5. Scales and balances used, intended for use or designed for use in weighing or measuring controlled substances;
6. Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use or designed for use in cutting controlled substances;

4

7. Separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

8. Blenders, bowls, containers, spoons and mixing devices used, intended for use or designed for use in compounding controlled substances;

9. Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances;

10. Containers and other objects used, intended for use or designed for use in storing or concealing controlled substances;

11. Hypodermic syringes, needles and other objects used, intended for use or designed for use in parenterally injecting controlled substances into the human body;

12. Objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish or hashish oil into the human body, such as:

   a. Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls;
   b. Water pipes;
   c. Carburetion tubes and devices;
   d. Smoking and carburetion masks;
   e. Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;
   f. Miniature cocaine spoons and cocaine vials;
   g. Chamber pipes;
   h. Carburetor pipes;
   i. Electric pipes;
   j. Air-driven pipes;
   k. Chillums;
   l. Bongs; and
   m. Ice pipes or chillers.

(ii) In determining whether an object is paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

   1. Statements by an owner or by anyone in control of the object concerning its use;
   2. Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;
   3. The proximity of the object, in time and space, to a direct violation of the Uniform Controlled Substances Law;
   4. The proximity of the object to controlled substances;
   5. The existence of any residue of controlled substances on the object;
   6. Direct or circumstantial evidence of the intent of an owner, or of anyone

5

in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of the Uniform Controlled Substances Law; the innocence of an owner, or of anyone in control of the object, as to a direct violation of the Uniform Controlled Substances Law shall not prevent a finding that the object is intended for use, or designed for use as paraphernalia;

7. Instructions, oral or written, provided with the object concerning its use;

8. Descriptive materials accompanying the object which explain or depict its use;

9. National and local advertising concerning its use;

10. The manner in which the object is displayed for sale;

11. Whether the owner or anyone in control of the object is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

12. Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

13. The existence and scope of legitimate uses for the object in the community;

14. Expert testimony concerning its use.

(iii) "Paraphernalia" does not include any materials used or intended for use in testing for the presence of fentanyl or a fentanyl analog in a substance.

6.     The specific definition of "paraphernalia" in the UCSL requires that the equipment or materials in some way be affiliated specifically with "controlled substances" that would violate the UCSL—in other words, illegal drugs.

7.     Because Section 105(v) has distinct subparts, subsections (i) and (ii) must be read together to determine whether an item is affiliated, or being used, with illegal drugs, and if not, then the item is not considered "paraphernalia" under the UCSL.

8.     Plaintiff, Lucas Tucker ("Tucker"), is the owner of The Handy Pantry, a store located at 2425 W 4th Street in Hattiesburg, Mississippi.

9.     The Handy Pantry has been in business and operating in the same location for more than 30 years.

10.    Tucker has worked at The Handy Pantry since 2008, and in October 2021, he formed an LLC and purchased the store and its inventory from the previous owners.

11.    There is a daycare within seven-hundred fifty feet (750') of The Handy Pantry.

12.    On March 10, 2023, the Assistant Division Manager for Code Enforcement for the City of Hattiesburg, Whit Sanguinetti ("Officer Sanguinetti"), completed a compliance inspection at the business premises of The Handy Pantry to determine conformity with the Ordinance.[2]

13.    Officer Sanguinetti spent several minutes going through the store with Tucker and explained areas of concern. Officer Sanguinetti stated that an inspection would take place after Tucker was given an opportunity to come into compliance with the Ordinance.

14.    Officer Sanguinetti came back at other times in the interim between the initial inspection and subsequent re-inspection to answer questions and provide additional feedback.

15.    Thereafter, The Handy Pantry began boxing up certain items.

16.    On March 17, 2023, Officer Sanguinetti returned to The Handy Pantry to complete the re-inspection, and although Tucker had begun to box up certain items, Officer Sanguinetti felt that Tucker had not corrected the areas of concern noted and explained to him the week prior.

17.    At this time, Officer Sanguinetti issued a Complaint and Citation (the "Citation") to Tucker for what the officer determined were the uncorrected violations. (Joint Trial Exhibit #2)

18.    Under the list of enumerated violations on the Citation, the box next to "Other" has been checked, and the words "Possession of Paraphernalia x6" are written in the blank.[3]

19.    There is no description provided on the Citation as to what items were determined to be "paraphernalia."

20.    From evidence in the record, the items found to be in violation were as follows:

        a.    a shot glass with a picture of a plant leaf that the officer felt represented illegal cannabis but Tucker deemed to be hemp;

        b.    a hookah or water pipe;

---

[2] According to his testimony, prior to 2021, the inspections were handled by the City's police department.
[3] It was later clarified by joint exhibit and Officer Sanguinetti's testimony that the City determined there were five items found to be violation and not six. *See* Joint Exhibit 3.

    c.    various types of "safes" that have false bottoms for concealing items—a fire extinguisher; a comet bleach can, a Kool-Aid canister, and a red bull can;

    d.    a Cali Crusher (also known as a grinder); and

    e.    a pipe with a smoking carburetion mask attached.

(Joint Trial Exhibit #3).

21.    Under a heading titled "Code Section & Reference," the Citation recites Sections 2 and 3 of the Ordinance.

22.    The Handy Pantry was cited for a violation of Section 3 because The Handy Pantry offers certain items for sale within 750 feet of a church or school, specifically a daycare facility.

23.    Although Section 2 of the Ordinance was listed on the Citation, Officer Sanguinetti found that the violations related only to Section 3.

24.    "Possession of paraphernalia" is not mentioned in the Ordinance.

25.    Tucker, through The Handy Pantry, sells and/or offers for sale various hemp products. (Plaintiff's Exhibit 1).

26.    Hemp is not a controlled substance in the State of Mississippi under the UCSL.[4]

27.    Tucker, through The Handy Pantry, sells and/or offers for sale products that can be used in consuming or processing legal hemp products that he sells and/or offers for sale, which includes pipes for smoking certain hemp products.

28.    Tucker, through The Handy Pantry, sells and/or offers for sale tobacco products.

29.    Tucker, through The Handy Pantry, sells and/or offers for sale products, including hookahs, that can be used with tobacco and/or hemp products that he also sells and/or offers for sale.

---

[4] The key difference between hemp and cannabis ("marijuana") is the tetrahydrocannabinol (THC) content. Hemp is legally defined as having no more than 0.3% delta-9 tetrahydrocannabinol (Δ9THC) on a dry weight basis. *See* https://www.healthline.com/health/hemp-vs-marijuana (last accessed 4/9/25); Miss. Code Ann. § 69-25-203. The Court will use the word cannabis to refer to what was commonly known as marijuana, i.e., the higher, illegal substance, although "cannabis" encompasses all products derived from the plant Cannabis sativa, some of which may not be a controlled substance. *See* https://www.nccih.nih.gov/health/cannabis-marijuana-and-cannabinoids-what-you-need-to-know (last accessed 4/9/25).

30.    Tucker, through The Handy Pantry, sells and/or offers for sale water pipes that can be used with tobacco and/or hemp products that he sells and/or offers for sale.

31.    Tucker, through The Handy Pantry, sells and/or offers for sale grinders that can be used with hemp products that he sells and/or offers for sale.

32.    Tucker, through The Handy Pantry, sells and/or offers for sale "safes" that are used to conceal whatever people may choose to conceal, which could include, but not be limited to, money, jewelry, and other valuable items, or illegal items.

33.    Tucker, through The Handy Pantry, sells and/or offers for sale shot glasses that have various images on them.

34.    Officer Sanguinetti cited Tucker for sale of the shot glass with the plant leaf insignia because he felt it "glamorized" the use of illegal drugs.

35.    All the items offered for sale in The Handy Pantry can be utilized for legitimate, legal purposes.

36.    Tucker had no knowledge that any items offered for sale would be used for anything other than legitimate legal purposes.

37.    Officer Sanguinetti sometimes did, and other times did not, consider the factors listed in Miss. Code Ann. § 41-29-105(v)(ii) in determining whether the items for which Tucker was cited were "paraphernalia."

38.    Officer Sanguinetti cited Tucker for some of the items simply because they are listed in Section 41-29-105(v)(i).

39.    Shot glasses are not specifically listed in Miss. Code § 41-29-105(v)(i).

40.    Crushers or grinders are not specifically listed in Miss. Code § 41-29-105(v)(i).

41.    Officer Sanguinetti was unsure exactly what items offered for sale in Hattiesburg could result in a citation.

42.     When reviewing the items listed in Miss. Code § 41-29-105(v), Officer Sanguinetti had to educate himself by googling the listed items, such as water pipes, to get a better understanding of what they were.

43.     Officer Sanguinetti acknowledged that the items offered for sale at The Handy Pantry had legitimate purposes.

44.     In issuing the citation, Officer Sanguinetti was not concerned about any intent that the items would be used for illegal purposes.

45.     Officer Sanguinetti did not investigate nor did he believe that Tucker knew that the specific items he was cited for would be used with controlled substances.

46.     Officer Sanguinetti believes that to issue a citation no connection to any illegal drug activity was required nor any connection to controlled substances as required under § 41-29-139(d).

47.     Officer Sanguinetti did not issue a citation for the sale of rolling papers because The Handy Pantry sells tobacco, which is legal.

48.     Officer Sanguinetti did issue a citation for water pipes even though The Handy Pantry sells hemp products, which are legal.

49.     Sanguinetti offered no explanation as to why he did not apply the same logic to the water pipes as he applied to the rolling papers.

50.     There was no evidence of any illegal or controlled substances offered for sale at The Handy Pantry or otherwise found in close proximity to any of the items offered for sale that were cited for under the Ordinance.

### III.    CONCLUSIONS OF LAW

Plaintiffs argue, among many things, that the City has created a novel and entirely new criminal misdemeanor in the Ordinance, which is invalid because it conflicts with or contradicts state law, is overly broad, vague, and violates the Plaintiffs' rights to due process, ignores the privileges and immunities of the Plaintiff Lucas Tucker, infringes upon the Plaintiffs' free speech, and should be considered a taking. Based on the relevant law and the aforementioned findings of fact, the Court further finds as follows:

### A.  Jurisdiction

As noted, this case was removed to this Court on July 11, 2023. Court has subject matter jurisdiction over this action based on federal question jurisdiction under 28 U.S.C. § 1331 due to Plaintiffs' contention that the Ordinance violates the United States Constitution. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 159 (1997) (holding that actions that contain both federal constitutional and state administrative challenges to municipal decisions maybe removed to federal district court).

### B.  The Ordinance Conflicts with State Law, Rendering it Invalid.

1.      Municipalities, like the City of Hattiesburg, may govern its municipal affairs through use of what is known as the "home rule" found in the Mississippi Code, which provides:

> The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances. In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities shall have the power to adopt any orders, resolutions or ordinances with respect to such municipal affairs, property and finances *which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi*, and shall likewise have the power to alter, modify and repeal such orders, resolutions or ordinances.

Miss. Code Ann. § 21-17-5(1) (emphasis added).

2.    The Mississippi Supreme Court has held that "[i]f a county or municipality passes an ordinance which stands in opposition to the law as pronounced by the legislature, the ordinance, to the extent that it contradicts state law, will be found void by this Court, as the laws of this state supersede any and all local ordinances which contradict legislative enactments." *Delphi Oil, Inc. v. Forrest Cnty. Bd. of Sup'rs*, 114 So. 3d 719, 722 (Miss. 2013) (quoting *Ryals v. Bd. of Sup'rs of Pike Co*., 48 So.3d 444, 448 (Miss. 2010)).

3.    The Mississippi Supreme Court has also held that a municipality "could not adopt any valid ordinance, the effect of which would be nullification of the State's statutes dealing with the same misdemeanor, such as the possession of beer made legal for personal consumption." *Collins v. City of Hazlehurst*, 709 So. 2d 408, 411 (Miss. 1997) (citing *City of Amory v. Yielding*, 203 Miss. 265, 34 So. 2d 726, 728 (1948)).

4.    "It is well established that in any conflict between an ordinance and a statute, the latter must prevail." *Watkins v. Navarrette*, 227 So. 2d 853, 855 (Miss. 1969).

5.    Courts determine if a state law preempts an ordinance "by considering the express language of a statute to determine whether there is a direct conflict between the state statute and the local ordinance." *Delphi Oil, Inc. v. Forrest Cnty. Bd. of Supervisors*, 114 So. 3d 719, 723 (Miss. 2013).

6.    First, the Court finds that the Ordinance improperly attempts to establish a misdemeanor crime[5] regarding paraphernalia in contradiction to the misdemeanor already defined in the UCSL.

7.    The drug paraphernalia section of the Mississippi Code that that establishes the state-wide criminal misdemeanor states, in relevant part:

---

[5] Although Officer Sanguinetti testified that the main objective of the ordinance is compliance, on its face, the Ordinance is a penal ordinance that establishes criminal penalties when it states that anyone who violates the Ordinance "shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than $100.00 nor more than $500.00, or by imprisonment not to exceed ninety (90) days, or by both such fine and imprisonment."

> (d) Paraphernalia. (2) It is *unlawful for any person to* deliver, *sell*, *possess with intent to* deliver or *sell*, or manufacture with intent to deliver or sell, *paraphernalia*, **knowing, or under circumstances where one reasonably should know**, *that it will be used to . . .introduce into the human body a controlled substance in violation of the Uniform Controlled Substances Law*. Except as provided in subsection (d)(3), a person who violates this subsection (d)(2) is guilty of a misdemeanor and, upon conviction, may be confined in the county jail for not more than six (6) months, or fined not more than Five Hundred Dollars ($500.00), or both.

Miss. Code § 41-29-139(d)(2) (emphasis added).

8.     Under the state statute what is to be sold or intended to be sold must be "paraphernalia," which has a specific definition set forth in § 41-29-105(v).

9.     As such, Sections 41-29-105(v) and 41-29-139(g) operate in conjunction to make the sale of, or possession with intent to sell, paraphernalia a crime.

10.     The UCSL specifically defines "paraphernalia" to mean "all products and materials of any kind which are used, intended for use, or designed for use in [a host of ways dealing with producing, preparing, storing, or in any way] introducing into the human body a controlled substance in violation of the UCSL." Miss. Code § 41-29-105(v)(i). The statute then sets forth some examples of items that *could* be considered paraphernalia. These items *could* be considered paraphernalia, but first the circumstances listed in subsection (v)(ii) must be taken into consideration.

11.     The most important aspect of any item to be defined as paraphernalia is that it must be affiliated in some way with controlled substances that violate the UCSL, i.e., illegal drugs. *See Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 513 (1994) (defining "drug paraphernalia" as any equipment "primarily intended or designed for use" with illegal drugs). That is why the considerations in (v)(ii) are so important.[6]

12.     The Ordinance, on the other hand, does not concern itself with any pre-determination under (v)(ii) that items for sale in the City are subjectively connected with illegal drug activity such

---

[6] It is these considerations that can turn items that have legitimate purposes into a finding it was being used for an illegal purpose.

that the items can then be found to be "paraphernalia." The Ordinance by stating that the items need only be *described in Miss. Code Ann. 41-29-105(v)* thereby deems certain items, regardless of their stated and proven legitimate purpose, to be "paraphernalia." In other words, the City declares that these items *are* going to be used for illegal drug use regardless of the circumstances surrounding their sale.

13.    Under the state statute, once an item is found to be an item connected in some way to illegal drug activity, i.e., paraphernalia, a person can be found guilty of a misdemeanor only if the person *knows or reasonably should know* that the item *will be* used to conduct various activities relating to controlled substances in violation of the UCSL. Miss. Code. Ann. § 41-29-139(g).

14.    The Ordinance has no intent, or *mens rea* element at all. There is no concern over what the seller knows or how the item will actually be used.[7]

15.    Given the foregoing, the Ordinance attempts to establish a criminal misdemeanor on the subject of paraphernalia that conflicts with the state statute dealing with the same misdemeanor. The conflicts lie not only with the difference in determining what is "paraphernalia" but also in the lack of a need to show knowledge that when offering items for sale, those items will be used for illegal drug related activity.

16.    With no intent element and no need for any affiliation with illegal drug activity, the Ordinance essentially criminalizes the sale of legal items for legitimate purposes.

17.    Because both Section 2 and Section 3 of the Ordinance deal with "paraphernalia" and neither Section contains a *mens rea* element, both Sections substantively alter the provisions of the UCSL and redefine the misdemeanor for those offering certain items for sale.

---

[7] By deeming these items "paraphernalia," meaning they *will be* used for illegal purposes, the Ordinance leads to the absurd result, as argued by Tucker and Handy Pantry, that the City is okay with illegal drug items being sold so long as a person or business complies with the Ordinance. That simply cannot be the intended effect of the Ordinance.

18.    The Court finds the Ordinance was outside the authority of the City to enact because both Sections contradict state law and attempt to create a new criminal prohibition preempted by state law. Therefore, the Ordinance is void.[8]

19.    The Court takes a moment to address a few points regarding the Ordinance. While the Court applauds the City's desire to protect teenagers and young adults from illegal drug activity, deeming certain items as "paraphernalia" and essentially declaring that such items will (or will likely) be used with illegal drug activity is likely not a workable starting point anymore. This became apparent as the Court considered the status of the legalization of cannabis products throughout the country, along with the growth of the hemp industry, and reviewed "paraphernalia cases" from the 1980's. These older cases are not as helpful as they once were because at that time, no state had legalized the medicinal or recreational use of cannabis, and so naturally, there were many items that were inherently likely to be deemed "paraphernalia" because there really was no legitimate use for such items. But times have changed.

20.    Medical cannabis first became legal almost thirty (30) years ago, when California was the first to legalize cannabis for medical use in 1996. *See* https://medicalmarijuanacardscalifornia.com/medical-marijuana/history/ (Aug. 9, 2023). As of February 2024, forty-seven (47) states, including Mississippi,[9] allow the legal use of cannabis for medical purposes. *See* https://www.cdc.gov/cannabis/about/state-medical-cannabis-laws.html (last accessed 4/9/25). Recreational use of cannabis has been legal in at least two states for almost thirteen years.[10]

---

[8]  The Ordinance states in Section 5 that "[n]othing contained in herein is intended to be in conflict with the laws of the State of Mississippi …." While the City may not have intended to be in conflict, the Court finds that it is. And although Section 5 goes on to state that if any part of the "…Ordinance is for any reason held to be invalid or unconstitutional by any court of competent jurisdiction, the remaining portions of this Ordinance shall remain in effect," with Section 2 and 3 found to be invalid, there is nothing left to enforce. Therefore, the entire Ordinance is void and invalid.

[9] Governor Tate Reeves signed the Mississippi Medical Cannabis Act (SB 2095) into law on February 2, 2022, almost three years after the City enacted its Ordinance.

[10] Colorado and Washington first legalized recreational use of cannabis in 2012. *See* https://healthland.time.com/2012/11/07/two-u-s-states-become-first-to-legalize-marijuana/ (last accessed 4/9/2025).

21.     The enactment of the 2018 Farm Bill, which allowed hemp production and the use of hemp products to become so prolific, has resulted in items that were once blatantly or at least highly likely to be considered paraphernalia no longer being viewed so suspiciously. This statement from a U.S. Supreme Court case illustrates the point:

> The objective characteristics of some items establish that they are designed specifically for use with controlled substances. Such items, including bongs, cocaine freebase kits, and certain kinds of pipes, have no other use besides contrived ones (such as use of a bong as a flower vase). Items that meet the "designed for use" standard constitute drug paraphernalia irrespective of the knowledge or intent of one who sells or transports them.

*Posters 'N' Things, Ltd.*, 511 U.S. at 518.

22.     Nowadays uses no longer have to be contrived because there are now fully legal and legitimate uses for items such as water pipes and hookahs. As the evidence in this case showed, there is even a hookah lounge located near The Handy Pantry and near the daycare. While such establishments are not selling hookahs to the public, the pipes used in such lounges are perfectly legal and can be used in such establishments without suspicion of illegal activity.

23.     Thus, again, while the Court finds the City's intentions laudable, with any future Ordinance that may attempt to regulate the sale of any item the City finds glamorizes illegal drug use, the City will need to be more specific and take into consideration the now legal and legitimate uses for many items.

C.  **The Ordinance is Also Unconstitutionally Vague.**

24.     The government violates the Due Process Clause by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591, 595 (2015).

25.     The Fifth Circuit has stated that "an enactment is void for vagueness if its prohibitions are not clearly defined." *J & B Ent't., Inc. v. City of Jackson*, 152 F.3d 362, 367 (5th Cir. 1998)

(quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)).

26.     The United States Supreme Court's explanation of the dangers of a vague law set out

in *Grayned v. City of Rockford* is worth noting:

> It is a basic principle of due process that an enactment is void for vagueness if its
> prohibitions are not clearly defined. Vague laws offend several important values.
> First, because we assume that man is free to steer between lawful and unlawful
> conduct, we insist that laws give the person of ordinary intelligence a reasonable
> opportunity to know what is prohibited, so that he may act accordingly. Vague
> laws may trap the innocent by not providing a fair warning. Second, if arbitrary
> and discriminatory enforcement is to be prevented, laws must provide explicit
> standards for those who apply them. A vague law impermissibly delegates basic
> policy matters to policemen, judges, and juries for resolution on an ad hoc and
> subjective basis, with the attendant dangers of arbitrary and discriminatory
> application.

408 U.S. 104, 108-109 (1972).

27.     The Ordinance is unconstitutionally vague in a few aspects, beginning with its title,

"An Ordinance Pertaining to Paraphernalia as Defined in MS Code 41-29-105(v)." From the outset,

it references the state statute dealing with illegal drug paraphernalia. In its preambulatory clauses, it

recites the UCSL's penalty provision regarding paraphernalia (Miss. Code Ann. 41-29-139(d)) and

then acknowledges that 41-29-105(v) both defines paraphernalia (contained in 105(v)(i)) and

provides how the court or other authority may determine whether an object is paraphernalia

(contained in 105(v)(ii)). But after acknowledging the distinction, it is unclear what specific portions

of that state law, if any, are actually incorporated into the Ordinance.

28.     Despite its reference to the UCSL, the Ordinance fails to satisfactorily outline what

items are subject to the Ordinance or the standards by which it will be determined a violation has

occurred.  The Ordinance states, "No person shall offer for sale any items described in Miss. Code

Ann. 41-29-105(v) . . . ." yet there is no differentiation between 105(v)(i) and (ii) or a specific

mention of one or the other. Thus, it is unclear whether both 105(v)(i) and (ii) are to be taken into

consideration in determining whether a violation has occurred—that is, both the definition of

paraphernalia and the considerations to be given in determining whether an item *is* paraphernalia. There are no standards at all for making that determination. As found in the previous section, items are simply deemed paraphernalia. As Officer Sanguinetti testified, when enforcing the Ordinance, no consideration is given as to any knowledge of illegal drug activity and only sometimes the considerations in (v)(ii), which would arguably render none of the items sold in Handy Pantry as "paraphernalia." As such, how is one to know what item or when such an item would be found in violation of the Ordinance?

29.    Another fact that supports the finding that the Ordinance is vague is that even when attempting to enforce the Ordinance using the "list" found in 105(v)(i), Officer Sanguinetti testified that he had to educate himself, and if he didn't understand the word from the Code, such as water pipes, he would Google it to research what it was.

30.    By referencing the UCSL, citizens familiar with the state law (or even one who simply reads 41-29-105(v)) would know that items "described in 41-29-105(v)" can only be "paraphernalia" if an item is related somehow to illegal drug (controlled substance) activity. Thus, anyone *not* engaging in illegal drug activity would not be on notice that the Ordinance could be enforced against them, such as someone like Lucas Tucker who is engaging in the sale of items that have legitimate, legal purposes and who had no knowledge of any illegal drug activity.  However, it is clear from the testimony in this case, that when enforcing the Ordinance, the item need not bear any actual relation to illegal drug activity—certain items are simply deemed "paraphernalia" without regard to the requirements of the state statute, thereby resulting in arbitrary enforcement.

31.    During his testimony, Officer Sanguinetti could articulate no particular standard for issuing a citation. For example, even though the officer acknowledged that all of the items Tucker was cited for can have legitimate, legal uses, he testified that he would *not* issue a citation for rolling papers because The Handy Pantry sells tobacco even though such items could be used to roll

cannabis, but he *would* issue a citation for a hookah even though hookahs are used to smoke the shisha tobacco that The Handy Pantry sells. The same is true for water pipes. Officer Sanguinetti issued the Citation for water pipes even though they are marketed and designed for use with the legal hemp products that The Handy Pantry sells in wide variety in the store.

32.    If the City was attempting to incorporate only the "list" of items found in 105(v)(i), the language does not reflect that it is using only *the list* and that for a violation, no intent or relation to drug related activity is needed. Even if that were the case, is the Ordinance regulating ONLY those items specifically listed in 105(v)(i) or can it be *any item* a code enforcement officer determines violates the Ordinance? The testimony made clear it is the latter. Officer Sanguinetti testified that he could issue a citation for items even if not on the list and did so. He testified and the evidence showed that he issued a citation for a shot glass, which is not listed in 105(v)(i) (or even commonly related to any illegal substance) but was deemed a violation because it had a plant leaf insignia that the officer found to be glorifying cannabis. Tucker testified the leaf also represents legal hemp. The leaves look exactly the same.

33.    The Court further finds that the vagueness of the Ordinance, due to unclear references to the UCSL, also resulted in the Citation being issued for "possession of paraphernalia x6," which does not fall into any conduct outlined in the Ordinance.

34.    Additionally, even though the Ordinance expresses in a preambulatory clause that the City is concerned with items being displayed in a manner that attempts to glamorize these items, the conduct prohibited in the Ordinance does not address "glamorizing" an item, and if it did, there is no standard to determine what would be considered "glamorization." Yet Officer Sanguinetti testified that he cited Tucker for the shot glass with the plant leaf insignia because Officer Sanguinetti felt that the shot glass glamorized the use of an illegal drug. That constitutes arbitrary enforcement.

35.    The "restriction[s] must be reasonably clear, enabling a citizen to understand what is allowed, and what is not." *City of Clinton v. Welch*, 888 So. 2d 416, 420 (¶21) (Miss. 2004)); see also *Roberts v. State*, 2019-KA-01647-COA, 2021 WL 1884057, at *4 (Miss. Ct App. May 11, 2021). The Ordinance is not reasonably clear as to which items are allowed to be offered for sale and displayed openly and which is not.

36.    For the foregoing reasons, the Court finds that the Ordinance is unconstitutionally vague, as it fails to give ordinary people fair notice of the conduct it punishes, and its vagueness has resulted in arbitrary enforcement.

**D.  Plaintiffs' Other Theories for Invalidating the Ordinance Were Not Sufficiently Proven.**

37.    Plaintiffs also plead and argued other grounds for invalidating the Ordinance, namely that it is overbroad; it impinges on constitutionally protected activities, such as free speech and privileges and immunities; and it constitutes a taking. Plaintiffs also seek to enjoin the Ordinance's enforcement under the doctrines of laches and equitable estoppel.

38.    The Court need not address these additional constitutional avenues of relief because the Court finds there was insufficient evidence to make a finding with regard to these theories.

39.    As for an injunction, the City has voluntarily foregone any enforcement or state court proceedings. Having struck down the Ordinance in this opinion, the Court finds the need for any further injunction moot.

## IV.    <u>CONCLUSION</u>

For the reasons discussed herein,  the Court finds that the accepted facts and law support the conclusion that the Ordinance is  invalid because it both conflicts with state law on the subject matter and because the Ordinance is unconstitutionally vague. Accordingly, because Plaintiffs seek no monetary damages, no such damages will be recovered. A separate final judgment in conformity

with and incorporating by reference the foregoing Findings of Fact and Conclusions of Law shall issue on even date herewith.

IT IS, THEREFORE, ORDERED that Plaintiffs shall prevail in this action in so far as Ordinance No. 3258, enacted by the City of Hattiesburg on June 18, 2019, is declared invalid and void.

SO ORDERED AND ADJUGED this 10th day of April 2025.


/s/ Keith Starrett_____
KEITH STARRETT
SENIOR UNITED STATES DISTRICT JUDGE